UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EUGENE CARL DeBOISE, SR., et al.,      )
                                        )
            Plaintiffs,                 )
                                        )
    v.                                  )        No.  4:10CV818 TIA
                                        )
TASER INTERNATIONAL, INC., et al.,      )
                                        )
            Defendants.                 )

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion of Defendant St. Louis County for Summary Judgment in Counts III and IV of Plaintiffs' Complaint (Doc. No. 76) and Motion for Summary Judgment of Defendants Lively and Percich in Counts I and II (Doc. No. 79).[1] The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**Background**

On July 7, 2008, Samuel DeBoise became delusional due to mental illness and left his house naked. (Compl. ¶ 41, ECF No. 1) He did not return that night, and the following morning neighbors reported to police that a naked man was beating houses in the neighborhood with a stick and calling himself God. (Id. at ¶¶ 41-42) On the evening of July 8, 2008, Samuel returned home in a deranged rage and confronted his mother, Betty Joe Gathing. (Id. at ¶¶ 19, 43-44) He called himself God and demanded that his mother worship him, which frightened Ms. Gathing. (Id. at ¶¶ 44-45) After holding his mother's head down on the floor, Samuel went to the rear of the house, while his mother left through the front door and went to a neighbor's home to call 911. (Id. at ¶¶ 46-48) Ms. Gathing

_____

[1] In response to these motions, Plaintiffs conceded that during discovery Plaintiffs failed to establish sufficient evidence to support their claims under Counts II and III. Thus, the Plaintiffs assert, and the Court agrees, that summary judgment on those counts is appropriate.

described Samuel's condition and requested police help.  (Id. at ¶ 48)  The neighbor could hear Samuel screaming, as well as throwing and breaking things in the house.  (LaPoint Dep. 49:10 - 50:16, ECF No. 81-8)  The 911 operator broadcast the incident as a "violent OBS", which meant an emotionally disturbed individual acting physically violent and using physical force against people or property.  (Compl. ¶ 49, ECF No. 1; Maechling Dep. 34:23 - 35:8, ECF No. 81-10)

Police Officer Arthur Williams arrived on the scene, and Ms. Gathing ran to the street and told Officer Williams that her son's behavior was terrifying her.  (Compl. ¶¶ 51-52; ECF No. 1)  She stated that her son was going to kill her.   (Williams Dep. 19:6 - 20:7, ECF No. 107-2) Officer Williams then heard a loud noise from the house before seeing Samuel exit the home.  (Compl. ¶ 55, ECF No. 1)  He was naked and claimed to be God.  (Id. at ¶¶ 56-57)  Samuel tore off the screen door and re-entered the home.  (Id. at ¶ 58)  Other police arrived on the scene, as well as an ambulance.  (Id. at ¶¶ 61, 80)   Samuel's mother informed Defendant Officer Percich that Samuel was schizophrenic and that she had a firearm in the house.  (Percich Dep. 109:21-110:4; 105:19-106:2, ECF No. 81-11)

Samuel then walked out the front door, still naked. (Compl. ¶¶ 62-63, ECF No. 1)  Officer Maechling told him to walk onto the grass and lie on his stomach, which Samuel did.  (Id. at ¶¶ 64-66)  When Defendant Officer Percich approached Samuel to handcuff him, Samuel rose to a standing position, clenched his hands into fists, and glared.  (Id. at ¶ 68; Percich Dep. 139:8-9, 145:10-17, 149:20-23, 20-23,150:14-17, ECF No. 81-11).  Officer Maechling continued to give Samuel verbal commands, but Samuel ignored them.  (Percich Dep. 149:12-17, ECF No. 81-11; Lively Dep. 83:14-84:3, ECF No. 81-9)   Officer Percich was afraid Samuel would assault the police officers, and Officer Lively believed Samuel was a danger to the police officers.  (Percich Dep. 146:16-23, ECF

2

No. 81-11; Lively Dep. 145:16-146:7, ECF. No. 81-9)  Officer Percich commanded Samuel several times to get back down on the ground.  (Percich Dep. 149:12-17, ECF No. 81-11)  He also yelled "taser, taser, taser," after which time he shot Samuel in "barb mode" with his TASER Model X-26 ECD.  (Percich Dep. 150:18-20, ECF No. 81-11; Compl. ¶ 70, ECF No. 1)  Defendant Officer Percich shocked Samuel repeatedly over the next 1 minute 37 seconds, with the dataport showing six full five-second cycles and an additional two second cycle.  (Compl. ¶ 71, ECF No. 1)  Defendant Officer Lively then shot Samuel in "barb mode" with his TASER over the next 38 seconds, and his dataport indicated four full five-second cycles.  (Id. at ¶¶ 72-73)

Throughout the tasing, Samuel continued to struggle and ignore verbal warnings to lay on his stomach.  (Id. at ¶ 75; Percich Dep. 155:17-157:4, ECF No. 81-11)  Although Samuel did fall to the ground after the first two taser applications, Officer Percich could not safely handcuff Samuel.  (Percich Dep. 154:7-158:3, 180:2-23, ECF No. 81-11)  Samuel again rose to his feet but went to the ground and laid face down in the grass after the third cycle.  (Id. at 162:5-164:25)  After Samuel fell to his stomach, Officers Percich and Money attempted to handcuff Samuel, who then rose to his knees and swung his arms from side to side.  (Id. at 166:21-167:18) Officer Percich delivered a fourth round, and Samuel again fell to the ground, but the wires were tangled in Samuel's legs.  (Id. at 167:25-168:8)  Samuel rolled on to his back and tried to stand up, at which time Officer Percich administered a fifth but ineffective cycle.  (Id. at 170:15-171:15)  Samuel again rose to his feet and began to walk toward Officers Maechling and Kaemmerer, at which time Officer Lively yelled, "taser, taser, taser" and delivered a taser cycle.  (Percich Dep. 205:25-206:19, ECF No. 81-11; Lively Dep. 101:2-14, ECF No. 81-9)  Samuel fell to the ground on his stomach with his hands underneath, but he attempted to get to his feet in a bladed position.  (Percich Dep. 209:22-210:9, ECF No. 81-11)

3

Officer Lively then cycled the taser a second time, and Officers Percich and Money began to handcuff Samual.  (Id. at 210:9-213:7; Lively Dep. 103:24-103:5, 106:12-20, ECF No. 81-9)

However, Samuel continued to kick at the officers, and Officer Lively twice administered the taser into Samuel's leg in stun mode.  (Percich Dep. 215:12-216:20, ECF No. 81-11; Lively Dep. 107:2-108:22, ECF No. 81-9)  Officers Percich and Money put pressure on Samuel's arms and shoulders to keep him from rising to his feet.  (Percich Dep. 219:10-220:25, ECF No. 81-11) Officers then requested that ambulance personnel assist Samual.  (Compl.¶ 80, ECF No. 1)  While the paramedic and EMT were attempting to treat Samual, he continued to be combative.  (Janssen Dep. 128:15-129:11, ECF No. 81-7; Sizemore Dep. 23:6-8, ECF No. 107-1)  Ambulance personnel then injected Haldol and Ativan.  (Compl.¶ 81, ECF No. 1; Sizemore Dep. 27:1-28:13, ECF No. 107-1)  The personnel then tried to transfer Samual to a gurney, at which time they realized Samual was in cardiac arrest.  (Compl. ¶ 84)  All attempts to revive Samual failed, and he was pronounced dead at Christian Hospital Northeast.  (Id. at  ¶¶ 85-89)

On May 5, 2010, Plaintiffs, Samuel's father and Samuel's two minor children, filed a Complaint against Taser International, Inc.; St. Louis County, Missouri; Police Officer Bret Lively, and Police Officer Joseph Percich.  Plaintiffs claimed that the individual Defendant Officers used excessive force in violation of 28 U.S.C. § 1983 and the Fourth Amendment (Count I) and that they were deliberately indifferent to his medical needs (Count II).  Plaintiffs also alleged that St. Louis County violated 28 U.S.C. § 1983 in applying certain policies and practices in dealing with irrational persons and using the TASER device (Count III).  In addition, Plaintiffs asserted a claim against St. Louis County under the Americans with Disability Act (Count IV).  Finally, Plaintiffs alleged claims under products liability laws against TASER, Inc. (Counts V – IX).  Plaintiffs voluntarily dismissed

4

their claims against TASER and acknowledged that summary judgment was appropriate for Counts II and III. Therefore, the only remaining claims are Count I against Defendant Officers Percich and Lively for excessive force and Count IV against Defendant St. Louis County for violation of the Americans with Disabilities Act ("ADA").

On November 21, 2012, Defendant St. Louis County filed a motion for summary judgment, arguing that its officers were not obligated to afford ADA accommodations to Samuel due to the unexpected and exigent circumstances that played out immediately prior to Samuel's arrest. Defendant Officers Percich and Lively filed a motion for summary judgment on that same date, asserting that they are entitled to qualified immunity on Plaintiffs' excessive force claim because the use of tasers was reasonable, and the law regarding the use of tasers on a resisting suspect was not clearly established. Plaintiffs contend that Defendant Officers Percich and Lively are not entitled to qualified immunity because genuine issues of material fact exist regarding whether they violated Samuel's Fourth Amendment right to be free from excessive force. Further, Plaintiff assert that a factual dispute exists as to whether Defendant St. Louis County violated the ADA by failing to accommodate Samuel's mental disability during the arrest.

## Legal Standards

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court show "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995).

The moving party has the initial burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor.  City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988).   Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

 When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists.  Fed. R. Civ .P. 56(e).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In fact, the non-moving party must present sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for that party. Anderson, 477 U.S. at 249; Celotex, 477 U.S. at 324.  Self-serving, conclusory, statements, standing alone, are insufficient to defeat a well-supported motion for summary judgment.  O'Bryan v. KTIV Television, 64 F.3d 1188, 1191 (8th Cir. 1995).

## Discussion

### Count I: Excessive Force by Officers Percich and Lively

Defendant Officers Percich and Lively argue that they are entitled to summary judgment under the doctrine of qualified immunity because either 1) they did not violate Samuel DeBoise's Fourth Amendment rights when they applied their tasers or 2) the state of the law on the date they used the tasers on Samuel would not have informed them that their use of force was unconstitutional. Plaintiffs, on the other hand, assert that the officers are not entitled to qualified immunity because

there are triable issues of fact whether the officers violated Samuel's Fourth Amendment right to be free from excessive force.  The undersigned finds that the Defendants Percich and Lively are entitled to qualified immunity such that summary judgment should be granted.

"Qualified immunity protects governmental officials from liability for civil damages if they have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Akins v. Epperly, 588 F.3d 1178, 1183 (8th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  This immunity permits "'officers to make reasonable errors,' Habiger v. City of Fargo et al., 80 F.3d 289, 295 (8th Cir. 1996), and provides 'ample room for mistaken judgments.'  Malley v. Briggs, 475 U.S. 335, 343, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)." Borgman v. Kedley, 646 F.3d 518, 522 (8th Cir. 2011).  In addition, "[t]he defense protects public officials unless they are 'plainly incompetent' or 'knowingly violate the law.'" Id. (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).   To determine whether government officials are entitled to qualified immunity, courts consider two factors: "(1) whether the facts alleged, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful." Keil v. Triveline, 661 F.3d 981, 985 (8th Cir. 2011).  The courts have discretion to decide which of the two prongs should be addressed first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).  "Although qualified immunity is an affirmative defense, the burden is on the plaintiff to plead, *and*, if presented with a properly supported motion for summary judgment, to present evidence from which a reasonable jury could find that the defendant officer has violated the plaintiff's constitutional rights." Moore v. Indehar, 514 F.3d 756, 764 (8th Cir. 2008) (citations omitted).

7

The Court will first address whether using tasers on Samuel several times violated his Fourth Amendment right to be free from excessive use of force.  "'Where, as here, the excessive force claim arises in the context of an arrest . . . of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment. . . .'"  Chambers v. Pennycook, 641 F.3d 898, 905 (8th Cir. 2011) (quoting Graham v. Connor, 490 U.S. 386, 394 (1989)).  Courts apply an objective "reasonableness" when evaluating excessive force claims.  Id.  "The determination whether the force used to effect a seizure was reasonable ultimately requires a case-specific balancing "of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"  Id. at 906 (quoting Graham, 490 U.S. at 396) (internal quotation omitted).  In making this determination, the degree of injury is not dispositive; rather, the rule focuses "on whether *the force applied* is reasonable from the perspective of a reasonable officer on the scene at the time the force was used."  Id. (citation omitted).

Courts look at several factors to determine whether the force used was objectively reasonable, including "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'"  Howard v. Kansas City Police Dept., 570 F.3d 984, 989 (8th Cir. 2009) (quoting Graham, 490 U.S. at 396.  In addition to the circumstances surrounding the use of force, courts may consider the result of the force.  Id. (citation omitted).  Although reasonableness is a fact question for the jury, defendants summary judgment is warranted where "the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances."  Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994) (citations omitted).

8

Here, Officers Percich and Lively argue that the amount of force used was reasonable in light of the totality of the circumstances.  The undersigned agrees.  When the first officer, Officer Williams, arrived at the scene, Samuel's mother indicated that he was trying to kill her.  Further, Defendant Officer Percich noted that Ms. Gathing had visible injuries but refused to seek treatment from paramedics on the scene.  (Percich Dep. 108:7-109:9, ECF No. 81-11)  Additionally, Defendant Officers contend that Samuel continuously arose in an attempt to flee or in a fighting stance position. While Plaintiffs attempt to piecemeal deposition testimony to fit the narrative that Samuel was compliant, the undisputed facts demonstrate that Samuel ignored verbal commands, was attempting to get to his feet, walked toward the officers, and continued to kick at the officers even after he was handcuffed.

Defendants also argue that Samuel posed an immediate threat to the safety of officers and others.  While the Court agrees that Samuel was not being detained for criminal behavior but for a mental health emergency, Defendants correctly state that the information given to them indicated that Samuel could be dangerous.  He had threatened his mother and had trolled the neighborhood hitting homes with a stick.  He had been screaming and breaking things in the house, and he tore down the front screen door.  In addition, Samuel actively resisted arrest and displayed behavior that was erratic and volatile.  While the evidence also shows that he was naked, unarmed, and surrounded by six police officers, testimony from the officers indicates that Samuel was physically strong and challenging.

Plaintiffs theorize that the officers missed a window of opportunity to handcuff Samuel, thus rendering the additional taser applications unnecessary and unreasonable.  However, courts judge the reasonableness of force "'from the perspective of a reasonable officer on the scene rather than with

9

the 20/20 vision of hindsight,' and [ ] must make 'allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" McKenney v. Harrison, 635 F.3d 354, 360 (8th Cir. 2011) (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)). Here, the Defendant Officers maintain that they did not feel safe to handcuff Samuel until he was better subdued. The officers verbally warned Samuel repeatedly, but he continued to actively disobey. Plaintiffs have offered no testimony to contradict the officer's perspectives regarding the tense and uncertain circumstances surrounding Samuel's arrest. Thus, the Court finds that the use of force was reasonable.

However, the inquiry does not end with finding that the officers are entitled to qualified immunity based on the reasonableness of their application of the tasers. The Court must also determine whether the state of the law on the date they used such force was unconstitutional. The Court finds that the law was not clearly established on the date in question, such that the Defendant Officers are entitled to qualified immunity.

"When determining whether an action was a clearly established constitutional violation, we look to the state of the law at the time of the incident." Shekleton v. Eichenberger, 677 F.3d 361, 366 (8th Cir. 2012) (citation omitted). "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). While fundamentally materially similar facts provide strong support for the conclusion that the law is clearly established, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Peizer, 536 U.S. 730, 741 (2002).

10

The Eighth Circuit Court of Appeals recently found that, as early as 2005, "the law was sufficiently clear to inform a reasonable officer that it was unlawful to Taser a nonviolent, suspected midemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call . . . ." Brown, 574 F.3d at 499; see also Shekleton, 677 F.3d at 367 (finding that the general constitutional principals against excessive force in using a taser against a nonfleeing, nonviolent suspect were clearly established even where the court had not specifically made such determination).

In the instant case, however, no one disputes that Samuel was resisting arrest and that the taser was used to subdue him.  In Clark v. Ware, 873 F. Supp. 2d 1117, 1122-1123 (E.D. Mo. 2012), the court noted that, in cases where plaintiffs are tasered "while actively resisting arrest by physically struggling with, threatening, or disobeying officers," courts either find that no constitutional violation occurred or that the right not to be tasered while resisting arrest was not clearly established when the incident happened.  The Clark court relied on opinions from the Eighth Circuit, other federal courts of appeals, and other district courts to find that the defendant officers did not violate clearly established law as of November 2009 in administering a taser where the plaintiff continued to actively resist arrest.  Id. at 1123; see also Abbott v. Sangamon Cnty., Ill., 705 F.3d 706, 728 (7th Cir. 2013) (holding that police officer did not violate clearly established law in 2007 by using the taser in drivestun mode several times until the plaintiff, who was actively resisting arrest, was subdued); Cockrell v. City of Cincinnati, 468 F. App'x 491, 498 (6th Cir. 2012) (finding that the law in July 2008 was unclear as to whether tasing a suspect fleeing from the scene of a nonviolent misdemeanor constituted excessive force); Mattos v. Agaramo, 661 F.3d 433, 448 (9th Cir. 2011) (holding, in

11

consolidated cases, that taser deployments in 2004 and 2006 did not constitute a clearly established Fourth Amendment violation); Bryan v. MacPherson, 630 F.3d 805, 833 (9th Cir. 2010) (finding that the law regarding tasers was not sufficiently clearly established in 2005 to warrant the denial of qualified immunity). Indeed, as aptly stated by the Sixth Circuit Court of Appeals, "[c]ases from this circuit and others, before and after May 2007, adhere to this line: If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him." Hagans v. Franklin Cnty. Sheriff's Office, 695 F.3d 505, 509 (6th Cir. 2012).

The evidence demonstrates that Samuel actively resisted arrest and continued to do so even after several rounds of tasing. At the time of the incident, in 2008, no clearly established law existed which would have informed the Defendant Officers that their use of the tasers was excessive and in violation of the Fourth Amendment. Therefore, the Court finds that Officer Lively and Officer Percich are entitled to qualified immunity, and summary judgment in their favor is warranted.

## Count IV: Violation of the ADA by Defendant St. Louis County, Missouri

Plaintiffs also claim that Defendant St. Louis County ("County") violated the Americans with Disabilities Act ("ADA") by failing to accommodate Samuel's mental impairment during his arrest. County contends that it is entitled to summary judgment on the ADA claim because, under the unexpected and exigent circumstances that played out immediately prior to Samuel's arrest, the officers were not obligated to afford ADA accommodations. The Court agrees that no ADA violation occurred and that County is entitled to summary judgment.

Title II of the ADA states, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits fo the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

12

"A disabled plaintiff can succeed in an action under Title II if he can show that, by reason of his disability, he was either 'excluded from participation in or denied the benefits of the services, programs, or activities of a public entity.'" Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000) (quoting 42 U.S.C. § 12132).  The parties do not dispute that Samuel was disabled due to his schizophrenia or that St. Louis County is a public entity.  Further, the parties agree that Title II protections extend into areas involving law enforcement.  However, County contends that, due to unexpected and exigent circumstances that played out immediately prior to Samuel's arrest, Officers Lively and Percich were not obligated to afford ADA accommodations to Samuel.

In Bahl v. Cnty. of Ramsey, 695 F.3d 778, 785 (8th Cir. 2012), the Eighth Circuit Court of Appeals refused to second guess a police officer's judgment and discretion during a traffic stop where the officer was presented with exigent or unexpected circumstances.  In Bahl, the plaintiff, who was deaf, drove through a red light and was subsequently pulled over by a police officer.  Id. at 781.  During the stop, the plaintiff gestured that he wanted to communicate in writing, but the officer, who was not carrying a pen or paper, used simple speech and gestures to ask for a driver's license instead.  Id. at 782.  Plaintiff sued the City of St. Paul, Minnesota, and argued that the decision to use simple communication and gestures was unreasonable and denied him meaningful access to services under the ADA.  Id. at 784.  However, the court found that "under the exigencies of the traffic stop, [the officer] was not required to honor [plaintiff's] request to communicate by writing."  Id.  The court noted that the situation escalated from a routine traffic stop, which necessitated an immediate response from the officer, because running a red light at rush hour was dangerous behavior and posed a threat to public safety.  Id. at 785.  Further, the plaintiff resisted the officer's efforts to identify him, as the plaintiff knew he needed to show his license.  Id.   The court granted the defendant City's

13

motion for summary judgment on plaintiff's ADA claim, reasoning that:

> The duties of police officers during a traffic stop call for the exercise of significant judgment and discretion, and we will not second guess those judgments, where, as here, an officer is presented with exigent or unexpected circumstances.  In these circumstances, it would be unreasonable to require that certain accommodations be made in light of overriding public safety concerns.

Id. at 785-86 (citations omitted).

In the instant case, the Court finds the circumstances even more exigent than those facing the officer in Bahl.  Here, the police arrived at the scene and encountered an out-of-control person, whose mother stated that he was trying to kill her and who had recently beaten the side of a nearby home with a stick.  In addition, police witnessed him tear down the screen door from his house.  Given the nature of Samuel's violent actions and the possible threat to public safety, the officers were faced with unexpected and exigent circumstances which did not obligate them to comply with ADA standards before subduing Samuel.  "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life."  Hainze, 207 F.3d at 801.  Thus, the undersigned finds that County is entitled to summary judgment on Plaintiffs' claim that County violated the ADA because the officers failed to accommodate his disability.

The Court also finds that County did not violate the ADA by failing to train its employees to properly interact and communicate with mentally ill persons.  Here, County's failure to train did not bring about the use of tasers, but Samuel's aggression and refusal to comply with the officers' commands.  Sanders v. City of Minneapolis, MN, 474 F.3d 523, 527 (8th Cir. 2007) (finding that

14

defendant city did not violate plaintiff's rights under the ADA for failure to train where plaintiff's attempt to run over officers, and not a failure to train, precipitated the use of deadly force).  As such, summary judgment in favor of County on Count IV of Plaintiffs' Complaint is appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion of Defendant St. Louis County for Summary Judgment in Counts III and IV of Plaintiffs' Complaint (Doc. No. 76) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment of Defendants Lively and Percich in Counts I and II (Doc. No. 79) is **GRANTED**.  A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____/s/ Terry I. Adelman_____
UNITED STATES MAGISTRATE JUDGE

Dated this  8th  day of July, 2013.